UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ART VAN FURNITURE, LLC.,<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10553 (CSS)<br>(Jointly Administered) |
| JOFRAN SALES, INC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ART VAN FURNITURE, LLC, AVF HOLDING COMPANY, INC., AVCE, LLC AVF HOLDINGS I, LLC, AVF HOLDINGS II, LLC, AVF PARENT, LLC, LEVIN PARENT, LLC, ART VAN FURNITURE OF CANADA, LLC, AV PURE SLEEP FRANCHISING, LLC, AVF FRANCHISING, LLC, LF TRUCKING, INC., SAM LEVIN, INC., COMFORT MATTRESS LLC , LEVIN FURNITURE, WOLF FURNITURE, HILCO MERCHANT RESOURCES, LLC, HILCO IP SERVICES, LLC, D/B/A HILCO STREAMBANK, HILCO REAL ESTATE, LLC, HILCO RECEIVABLES, LLC, GORDON BROTHERS RETAIL PARTNERS, LLC, DJM REALTY SERVICES, LLC, D/B/A GORDON BROTHERS REAL ESTATE, GORDON BROTHERS COMMERCIAL & INDUSTRIAL, LLC, GORDON BROTHERS BRANDS, LLC, AND DUNG KHANH CO., LTD.,<br><br>　　　　　　Defendants. | Adversary No. 20-_____ (CSS) |

## VERIFIED COMPLAINT

This is a civil action brought by the Plaintiff, Jofran Sales, Inc. ("Jofran" or the "Plaintiff") seeking (i) a temporary restraining order, (ii) preliminary and permanent injunctive relief, (iii) destruction of the infringing goods, (iv) disgorgement of profits ,and (v) granting to

Jofran such other damages to be determined by the court based upon Defendants' willful acts of federal and common law trade dress infringement, false designation of origin, unfair competition, unfair and deceptive trade practices, and fraudulent inducement.

## BACKGROUND

Here, Art Van Furniture, LLC, one of the above-captioned debtors (collectively, with the other affiliated debtor entities, the "Debtors"), doing business as Levin Furniture ("Levin" and Wolf Furniture ("Wolf"), developed an intentional scheme to copy two brands of furniture designed and sold by Jofran, to sell in certain, if not all, of the Debtors stores  Such actions are the direct and proximate result of certain of the defendants willful acts of federal and common law trade dress infringement, false designation of origin, unfair competition, unfair and deceptive trade practices, and fraudulent inducement.

By and through this action, Jofran seeks to restrain all of the above-captioned defendants (collectively, the "Defendants") from manufacturing, advertising, selling or otherwise transferring the infringing furniture.

Further, Jofran seeks to require the destruction of the infringing goods, the disgorgement of profits received, and such other and further damages as the Court determines to be appropriate.

## THE PARTIES

1.    The plaintiff, Jofran Sales, Inc., is a corporation duly organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at One Jofran Way, Norfolk, Norfolk County, Massachusetts.

2.    Defendant Art Van Furniture LLC is a Delaware LLC ("Art Van Furniture") which does business in part under the names Levin Furniture and Wolf Furniture.  Art Van filed

2

a chapter 11 petition in this court which is being jointly administered at Case No. 20-10553 (collectively, the "Bankruptcy Case") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3.      Defendant AVF Holding Company, Inc., Defendant AVE, LLC, Defendant AVF Holding I, LLC, AVF Holdings II, LLC, Defendant AVF Parent, LLC , Defendant Levin Parent, LLC, Defendant Art Van Furniture of Canada, LLC, Defendant AV Pure Sleep Franchising, LLC, Defendant AVF Franchising, LLC, Defendant LF Trucking, Inc., Defendant Sam Levin, Inc. and Defendant Comfort Mattress, LLC are each debtors (collectively, with Art Van, the "Debtor-Defendants") in jointly administered Bankruptcy Cases, and Jofran understands that each of the Debtor-Defendants can be served at 6500 East 14 Mile Road, Warren Michigan 48092.

4.      Defendant Levin Furniture, LLC is a newly formed entity controlled by Robert Levin which seeks to purchase all of the assets of Debtors Sam Levin, Inc. and LF Trucking, Inc.

5.      Defendant Levin Trucking LLC is a newly formed entity controlled by Robert Levin which seeks to purchase all of the assets of Debtors Same Levin, Inc. and LF Trucking, Inc.

6.      Defendant Dung Khanh Co., Ltd. (the "Manufacturer-Defendant") s is a company located in Vietnam, who, upon information and belief, manufacturer furniture for the Debtor-Defendants.

7.      Hilco Merchant Resources, LLC, Hilco IP Services, LLC, d/b/a Hilco Streambank, Hilco Real Estate, LLC, Gordon Brothers Retail Partners, LLC, DJM Realty Services, LLC d/b/a Gordon Brothers Real Estate, Gordon Brothers Commercial & Industrial, LLC, Gordon Brothers Brands, LLC (collectively, the "Consultant Defendants"), are consultants

11579528/1

to the Debtors based upon certain Consulting and Marketing Services Agreement dated March 4, 2020 (the "Consulting Agreement").  A copy of the Consulting Agreement is attached as an Exhibit to the Store Closing Sale Motion (as defined herein) at Docket No. 52.

## JURISDICTION

8.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) because the claims asserted herein are related to a case filed under the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") pending in the Bankruptcy Court.

10.     This Complaint is brought pursuant to Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for injunctive relief.  Further, and to the extent necessary, Jofran brings this action pursuant to Bankruptcy Rule 7001(2) to determine the validity, priority, or extent of a lien or other interest in property, and pursuant to Bankruptcy Rule 7001(10) to allow the Plaintiff's claims against the Debtor.  Pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (K), and (O), this matter is, in part, a core proceeding and in part a non-core, bankruptcy-related proceeding.

## FACTS

### Jofran's Business

11.     Jofran is a 45-year-old, family-owned wholesale supplier of popularly-priced furniture marketed to leading retailers throughout the United States.

12.     As part of its business, Jofran designs the furniture it sells, imports the manufactured furniture from overseas, and wholesales the furniture to its home furnishing store customers in the United States.

13.     In addition, Jofran has a significant e-commerce presence and sells its furniture through online-retailors such as Amazon and Wayfair.

14.     Jofran designs and test markets its furniture at considerable expense to the company before engaging in a full scale production of a furniture line or collection.

15.     Prior to committing new designs to the marketplace, Jofran tests the designs at tradeshows in the United States.

16.     This pre-production phase of design and the marketing of new furniture lines is an expensive process which includes the cost of shipping product from its oversees manufacturers in order to set up showrooms to display the furniture, employing sales staff to run the showroom and other costs associated with the marketing of the furniture collections.

17.     Based upon the response of the potential wholesale buyers to the furniture displayed in the showroom at the Tradeshows, Jofran commits to full production of a particular line of furniture.  As part of Jofran's furniture production, it creates "lifestyle" collections, as described below.

18.     In 2015, Jofran began selling its Cannon Valley furniture collection (the "Cannon Valley Collection"). The first furniture from the Cannon Valley Collection was shipped in 2016.

19.     From inception, Jofran has sold the Canon Valley Collection to 731 retail furniture customers, many of which have multiple retail outlets.

20.     In 2017 Jofran began selling and accepting orders for its Madison County furniture collection (the Madison County Collection, and together with the Cannon Valley Collection, the "Collections"). The first furniture was shipped from the Madison County furniture collection in 2018.

21.     From inception, Jofran has sold the Madison County Collection to 829 <u>retail</u> furniture customers, many of which have multiple retail outlets (this number is only for the white/brown tone of the Madison County line.  It is also manufactured in different colors and the sales of those other colors is not reflected here).

22.     The Collections contain multiple pieces of furniture which as a group are designed and described in advertising to create a particular look and feel for the home. Through the marketing efforts of Jofran, the Collections became bestselling brands with a significant presence in the retail marketplace.  From inception through 2019 Jofran sold $19,763,599 dollars (wholesale) of the Cannon Valley Collection, and from inception through 2019 Jofran sold $19,001,097 dollars (wholesale) of the white/brown color of the Madison County Collection.

23.     As a result of Jofran's marketing, the Collections have become popular items readily identifiable in the marketplace.  The overall image of each Collection serves to identify the product to the Consumer.

24.     Individual consumers of furniture do not always purchase an entire collection of furniture at one time.  They may purchase individual pieces of furniture on multiple occasions until the consumer has completed the "collection".

25.     As a result of Jofran's marketing and those of other retailors selling its Collections, the Cannon Valley Collection and the Madison County Collection and the trade dress of the Collections acquired substantial recognition among the public.[1]

26.     The trade dress of the Collections is inherently distinctive and has acquired strong fame and/or secondary meaning to consumers and potential consumers.

---

[1] Jofran's furniture can be found in major furniture retail outlets throughout the United States.  *See* www. Jofran.com for a list of stores (Also see Ex. 25).  In addition Jofran's furniture is is available through major chain retailors such as Target, Jordan's Furniture, and Wal-Mart.  The Collections are also available at Amazon.  In each instance the furniture is designated as Jofran sourced.  See Exs. 26-32.

## Art Van d/b/a Levin And Wolf

27.    The Debtor-Defendants, who own multiple furniture stores, have a history of purchasing furniture from Jofran, including various "lifestyle" collections to sell in their stores.

28.    Debtor Defendants purchased Jofran furniture through sales representatives in their territory.

29.    The Jofran brands, including the lifestyle collections sold well in Debtor Defendants' stores and through their website.

30.    Levin has in the range of 53 stores in Pennsylvania Ohio.

31.    Wolf has in the range of 13 stores in Pennsylvania, Maryland and Virginia.

32.    Upon information and belief, the Levin and Wolf stores, source product out of the same warehouse after purchasing from Jofran.

## Art Van, Levin and Wolf's Intentional and Willful Bad Acts

33.    In 2017 Levin and Wolf were acquired by Art Van, LLC.  In connection with this acquisition, certain of the Debtor-Defendants developed a plan to significantly expand their businesses.

34.    In connection with this desire to expand, rather than continue to supply their stores from the previously well selling Jofran brands, or design their own furniture, certain of the Debtor-Defendants developed a scheme to profit off of Jofran's designs, Jofran's market testing of its lifestyle brands, and success of sales of Jofran's furniture in their stores by copying two of Jofran's bestselling furniture collections and selling those copies in the Wolf and Levin stores.

35.    Levin was an early seller of the Cannon Valley Collection.  It first ordered furniture from the Cannon Valley Collection in 2015 and received it in 2016.  At all times Levin ordered the Cannon Valley Collection from Jofran in Massachusetts and picked up the furniture

from Jofran's Massachusetts warehouse.  At times, Levin also received the Cannon Valley furniture from containers shipped from Vietnam.

36.    Wolf first ordered and received furniture from the Cannon Valley Collection in 2017.  At all times, Wolf ordered the Cannon Valley Collection from Jofran in Massachusetts and picked up the furniture from Jofran's Massachusetts warehouse.  At times, Wolf also received the Cannon Valley furniture from containers shipped from Vietnam.

37.    In 2016, Art Van ordered and received $215,453 (wholesale cost) worth of furniture in the Cannon Valley Collection from Jofran.

38.    In 2017, Art Van ordered and received $445,632 (wholesale cost) worth of furniture in the Cannon Valley Collection from Jofran.

39.    In 2018, Art Van ordered and received $491,776 (wholesale cost) worth of furniture in the Cannon Valley collection from Jofran.

40.    In mid-2019, Art Van's orders of the Cannon Valley Collection began to decrease and by October 2019, Art Van was no longer ordering the Cannon Valley Collection from Jofran.  In 2019, Art Van ordered and received $179,649 (wholesale cost) worth of furniture in the Cannon Valley Collection from Jofran.

41.    In 2018, Art Van first ordered the Madison County Collection from Jofran and at all times it was picked up by from the Jofran warehouse in Massachusetts.  At times Wolf also received the Cannon Valley furniture from containers shipped from Vietnam.

42.    In 2018, Art Van purchased $476,838 (wholesale cost) worth of furniture from the white/brown two tone color of the Madison County Collection (this collection also comes in other colors).

8

43.    By 2019, Art Van's purchases of the Madison County Collection decreased to $298,171 (wholesale cost).

44.    Wolf's top selling dining set was in the Madison County Collection.  Yet starting in October 2019, Wolf ceased to purchase the dining sets from Jofran.

45.    Once Art Van established significant sales of the Collections, rather than continue to purchase the Collections from Jofran, it stopped buying the Collections and turned to copying and manufacturing duplicates of the Collection for their own stores.

46.    Art Van and the Manufacturer Defendant have re-created the look and feel of the Cannon Valley Collection designed and manufactured by Jofran and renamed the copied collection the "Reign Collection."

47.    Art Van and the Manufacturer Defendant have recreated the look and feel of the Madison County Collection and renamed the copied collection the Manadal collection.

48.    At the end of 2019, a Jofran sales representative visited some of the Levin and Wolf stores and noticed that Defendants were carrying furniture in their retail stores that was identical in look, feel and design to the Cannon Valley Collection and the Madison County Collection of furniture.  See Ex. 22, which is a true and accurate copy of Wolf's display of the Madison County Collection and Later Wolf's display of the Mandal Collection.

49.    An investigation into this matter at the end of 2019 also showed that Levin was offering the copies of the Collections on its website.  In 2020, Wolf followed suit and began offering the copied Collections on its newly designed website.

50.    The specific products on Art Van's retail floor and later showing up on its website by the end of 2019 and early 2020 which copied Jofran's furniture designs are listed below. Pictures of the furniture designed by Jofran, comparing them with the infringing designs are

9

attached at Exhibits 1-15.   Attached as Exhibits 1-22 are true and correct copies of screen shots from the Jofran, Levin and Wolf websites depicting Jofran's furniture and the infringing copies. A complete list of the infringing furniture is found at Ex. 36.

51.      Later in February 2020, Art Van began offering additional pieces from the Madison County Collection by copying the dining and bedroom sets of these furniture lines. Comparisons of the individual pieces of furniture from the Jofran website and Art Van's websites are attached as Exhibits 16-22.

52.      The copying of the look and feel of the Collections is so blatant that not only have Art Van and the Manufacturer-Defendant created identical copies of the Collections, the descriptions of the copied Collections are at times identical to the text describing the furniture collections set out on Jofran's website.

53.      The copying of the look and feel of the Collections is so blatant that Art Van used Jofran's "sku" (stock keeping unit) numbers to identify the furniture in its in-store and online sales.  See Exhibit 36 which shows Jofran "sku" numbers compared with the copied furniture sku numbers.

54.      "Sku" numbers are a product number that companies use to keep track of inventory and is an identification number that customers may use to make sure they are ordering the desired piece of furniture.

55.      The use of Jofran's "sku" for the furniture line is significant because a customer would not know that Art Van's copied furniture had replaced the Collection if they were searching to purchase a new and related pieces by sku number.

56.     Jofran's "sku" number identifying the Cannon Valley Collection is 1510 (for occasional furniture), 1511 for dining and 1512 for media furniture.  As shown on Exhibit 36, Art Van has used the collection identification in connection with their Reign collection.

57.     The Jofran "sku number identifying the Madison County Collection is 1706 for all of the furniture in the line.  As shown on Exhibit 36, Art Van has used the collection identification in connection with their Manadal collection.

58.     Exhibits 1-8 attached to this complaint show the Cannon Valley Collection of furniture manufactured by Jofran side by side with the copies created by Art Van.

59.     Art Van and the Manufacturer-Defendant copied the look and feel of the Cannon Valley Collection by using substantially similar design for the furniture and by creating the same look and feel of the entire collection.  The look and feel and the "image" of the Collections are non-functional.

60.     The Cannon Valley Collection is designed with warm medium brown wood tones lightly distressed to accentuate wood grain with industrial hardware.

61.     Jofran describes it Cannon Valley collection of furniture in the following manner on its website:

> Distressed with an air of industrial history.  This collection is a beautiful tribute to the past while maintaining a distinctly contemporary feel.  Apothecary hardware add to the character of these pieces while sturdy construction, clear lines and ample storage make this group a wonderful addition to any home.  This collection features media, occasional and casual dining pieces.

Exhibit 1 p. 1.

62.     Art Van describe their Reign Collection – Levin and Wolf's name for the collection copied from Jofran's Cannon Valley Collection - on their websites as follows:

> The Reign dining collection blends heritage appeal with a touch of industrial charm. Crafted of acacia solids and veneers in a distressed medium finish that allows the wood

11

grain to shine.  ==Industrial black metal hardware add to the character of these pieces while sturdy construction, clean lines and ample storage make this group a wonderful addition to any home.==

Ex. 1, pp. 2-3.

63.     Even where Art Van is not copying the exact descriptions from the Jofran website, it is still describing the look and feel of the Cannon Valley Collection.  For example, Exhibit 1 compares the Cannon Valley Wine Cabinet manufactured by Jofran with the Design Buffet shown on the Wolf and Levin websites.

64.     The two pieces of furniture are identical in look and feel.

65.     Jofran describes the piece as "distressed with an air of industrial history" while Art Van describe the Design Buffet as having "a touch of industrial charm."

66.     The descriptions set out above in paragraphs 60-61 appear on the Levin and Wolf webpages for each of the pieces of furniture in the Cannon Valley Collection.  See exhibits 1-8.

67.     Exhibits 9-22 compare Jofran's Madison County Collection with Art Van's Manadal Collection.

68.     The Madison Count Collection is designed with the non-functional sliding barn doors and two tone vintage distressing.

69.     Again, Art Van captures the look and feel of the Madison County Collection through the design and by copying the description of the collection from Jofran's website.

70.     Jofran's website describes its Madison County collection as "==Expertly crafted using reclaimed pine and gliding barn door accents, this occasional collection provides relaxed sophistication for your living space.==  With the choice of two difference finishes . . . . This group blends rustic and natural style to bring a unique and exceptional feel to your home."  Ex. 9 p. 1.

11579528/1

71.     Art Van describes the look and feel of the Manadal collection in almost identical terms as "Expertly crafted using reclaimed pine and gliding barn door accents this table collection provides relaxed sophistication."  Ex. 9 p. 2-3.

72.     Exhibits 1-22 show the copied furniture and highlight a comparison of the text from the Jofran and Levin and Wolf's website that show the use of the identical text by Defendants used for copying the look and feel of the Collections.

73.     In February 2020, Art Van began offering a copy of Jofran's Madison County Queen and King Panel bedroom suite(s).  They call it the Manadal Bedroom Collection.  The beds are designed with the same look and feel.

74.     By this time Jofran had confronted Levin about the copying.  But, not to be deterred, Levin and Wolf brazenly and once again used language directly from the Jofran website to copy the new addition to their Manadal collection. See Ex. 16 pp. 1-3.

75.     Jofran describes the Madison County Queen Panel Bed on its website as:

> "With reclaimed pine and gliding barn door accents this bedroom suite provides the same relaxed sophistication for your bedroom.  Create an oasis of rest and relation with this group blending rustic and natural style to bring a unique group and exceptional feel to your space.  Tasteful distressing should be expected and enjoyed."

See Ex. 16, p. 1 (emphasis added).

76.     Art Van describes the Manadal Bedroom Collection as:

> "With solid pine and barnwood accents, this bedroom suite provides the same relaxed sophistication for your bedroom.  Create an oasis of rest and relation with this group blending rustic and natural style to bring a unique group and exceptional feel to your space.  Tasteful distressing should be expected and enjoyed."

See Ex. 16, pp. 2-3 (emphasis added).

77.     Considering that Art Van had previously carried Jofran's Cannon Valley and Madison County Collections in their stores.  Art Van's creation and use of the infringing collections and trade dress were done willfully in an effort to impermissibly copy Jofran's trade dress, to trade on the goodwill Jofran has created for its furniture, and to mislead customers into believing there is an association between Defendants and Jofran.[2]

78.     Considering that Art Van had previously carried Jofran's Cannon Valley and Madison County Collections, they were clearly were aware of Jofran, its Collections and trade dress when it, together with the Manufacturer-Defendant "designed" the infringing furniture and copied the descriptions for the Collections from Jofran's website.

79.     Art Van's appropriation of Jofran's trade dress is likely to cause confusion, mistake or deception as to the source or origin of Art Van furniture because of the relatedness of such furniture to Jofran's Collections.

80.     Upon information and belief, by its willful conduct, the Art Van has made and continue to make substantial profits and gains to which it is are not entitled in law or equity.

81.     By reason of the Art Van's conduct, Jofran has suffered and will continue to suffer damages unless restrained by this Court.

82.     Jofran is without adequate remedy at law.

### Levin and Wolf Promised They Would Not Copy From Jofran to Entice Jofran to Continue to Sell Product to Defendants

83.     Art Van's actions in copying Jofran furniture is willful and done with intent.

84.     The copying of the Collections is not the First Time Levin and Wolf have tried to reproduce Jofran's designs.

---

[2] Jofran provides it suthorized retailers who are describing its Cannon Valley and Madison County Collections descriptions of the Collections drafted by Jofran.  See, e.g. Ex. 28 www.afastores.com describing the Madison County collection in the same words set out above; and other retail stores webpages using the descriptions at Exs. 26-29.

85.    In July of 2018 Jofran discovered (by the mistake of a Levin employ who inadvertently sent e-mails to Jofran) that Levin was sending out samples of Jofran furniture for copying.

- On July 24, 2018 Amanda Balistreri, merchandising assistant at Levin Furniture sent an email [to a furniture distributor] stating "we are working with Stein World to make samples of our Jofran pieces for us.  They are wanting to pick up the following SKUS [390330, 3902300, 164700, 1525310, 1520311, 1550500, 1560780]….Mark from Stein World will be contacting you and Jess for pickup."

- On July 31, 2018 Robert Curtiss of Stein World confirmed in an email that the Stein World freight department had been notified that they needed to pick up the Jofran Floor samples from Levin.

- On August 3, 2018 YRC Freight picked up seven pieces for shipment to Elk Lighting.  Those seven pieces were identified as Jofran's furniture by the "Return to Vendor Memo" matching Levin's SKU with Jofran's SKU as follows:

| Levin SKU | Jofran SKU |
|-----------|------------|
| 1520311 | 1520-31 |
| 1525310 | 1525-31 |
| 1550500 | 1550-50 |
| 1560780 | 1560-78 |
| 1643700 | 1643-70 |
| 3902300 | 39023A |
| 3903300 | 39033A |

- On August 17, 2018, Levin sent a Return to Vendor chargeback to Jofran which plainly indicates that the items identified by the above SKU numbers were "send (sic) to Mark at Steinworld".

86.    After a series of communications between Jofran's owner Joff Roy and Levin's Executive VP and General Manager Chris Pelcher, Levin agreed to stop copying Jofran's furniture.  See E-mail Communication at Ex. 33 which is a true and correct copy of an email between Roy and Pelcher.)

15

87. The series of email communications culminated in the following from Chris Pelcher, which was a representation that Levin would not copy Jofran's furniture.

Hi Joff.

Sorry I didn't get back to you.
What I learned was that it was an amazingly embarrassing f*** up that I stopped the minute it was clear to me what was taking place after you sent this original email. I sadly wasn't aware what was going on which is an issue and has been addressed.
It should never have happened and saying I'm sorry to someone who I've known for 20 years simply doesn't feel like enough.
Selling furniture is one thing, maintaining good relationships and not doing underhanded things to long term partners is another.
You've known me long enough to know what happened isn't my style.
Hopefully we can put this behind us.

Chris (Ex. 33).

88. In 2020, when Chris Pelcher was confronted with the copying of the Collections, a more extensive and far reaching copying job – he no longer expressed outrage and did not deny the copying.

89. On Jan 5, 2020, Chris Pelcher (who now holds positions at Art Van, Levin and Wolf) wrote to Joff Roy seeking information on a back order. "Good Morning Joff, Happy New Year. Joff, any help with the email below would be great. Thanks. Chris." See Ex. 34 which is a true and correct copy of an email communication between Roy and Pelcher.

90. Joff Roy responded on the same day stating "Not really too happy with how you have cold copied two of our collections." See Ex. 34.

91. Pelcher did not deny the copying and instead responded "O.K. Could you please ship what we have open then we can close the book on the relationship." See Ex. 34.

92. Art Van has willfully and intentionally used the Jofran Collections to determine what sells – without going through the design and marketing and showroom costs – and then

16

piggybacked on Jofran's hard work and success by copying tried and true Collections in and placing them for sale in their stores.

### The Debtors Plan to Sell the Infringing Reign and Manadal Furniture Collections as Part of the Sale of Wolf and Levin and Liquidate the Rest

93.     The Debtor Defendants have stated that they "commenced these chapter 11 cases to effectuate a going-concern sale of approximately 44 stores and two distribution centers operating under the Wolf and Levin Banners and to wind down its remaining store locations and other operations through a going out of business sales process."  See Declaration of David Ladd, paragraph 6 [Docket 12] (the "Ladd Affidavit").  A copy of the Ladd Aff. is attached as Ex. 35).

94.     As part of its wind-down, the Debtor-Defendants plan to sell the Levin business segment and a portion of the Wolf business segment as a going concern.  See Ladd Affidavit., paragraph 19.

95.     The key terms of the "Levin-Wolf" Sale are set forth in a letter of intent, dated March 4, 20120, a copy of which is attached as Exhibit B to the Ladd Affidavit.

96.     As stated in the Ladd Affidavit, the sale will "provide for the continued operation of approximately 44 retail store locations under the Wolf and Levin store banners and two related distribution centers."  Id. at paragraph 19.

97.     At least the 44 retail stores, the two distribution centers and the 8 Wolf stores not part of the Letter of Intent contain the infringing furniture.

98.     Upon information and belief, there may be infringing furniture in the process of being manufactured in Vietnam, on the water in containers in transit to the United States for sale by Art Van, or otherwise in the possession of the other Debtor Defendants.  See Exhibit 23 which is a true and accurate copy of a packaging crate from the Manadal collection indicating that Defendants are manufacturing at least the Manadal collection in Vietnam.

99.     Jofran seeks a Temporary Restraining Order and a Preliminary and Permanent Injunction to prevent Defendants from manufacturing, selling or otherwise disposing of the infringing Reign and Manadal collections.

## The Debtors' Bankruptcy Petitions and Related Filings

100.    On March 8, 2020, each of the Debtor-Defendants filed a voluntary bankruptcy petition in the Bankruptcy Court, and the Bankruptcy Cases have been jointly administered pursuant to an Order of the Bankruptcy Court dated March 10, 2020.

101.    Substantially contemporaneously with the filing of the bankruptcy petitions, the Debtor-Defendants filed (1) the Ladd Affidavit that attaches a letter of intent (the "Letter of Intent") regarding the referenced sale, and (2) an Emergency Motion for Entry of Interim and Final Orders (i) Approving Procedures for Store Closing Sales, (ii) Authorizing Customary Bonuses to Employees of Closing Stores, (iii) Authorizing Assumption of the Consulting Agreement Under §§ 363 and 365 of the Bankruptcy Code, (iv) Authorizing the Debtors to Retain Certain Consultant Entities as Special Asset Disposition Advisors to the Debtors Pursuant To §327(A) of the Bankruptcy Code and (V) Granting Related Relief [Docket No. 52] (the "Store Closing Sale Motion")

102.    Among other things, the Debtor Defendants seek to retain the Consultant-Defendants to assist the Debtor-Defendants to liquidate the Debtor-Defendants' assets pursuant to the Consulting Agreement.

103.    Because of the expedited nature of the sale outlined in Ladd Affidavit and the Store Closing Sale Motionand absent a restraining order, the infringing furniture collections will be sold at a liquidation sale or sold to the Buyers' identified in the Letter of Intent.

104.    If the infringing furniture is allowed to be sold, Plaintiff will be immediately and irreparably injured by the further infringement and dilution of its protected rights in the trade dress of its furniture designs.

## COUNT I
## TRADE DRESS INFRINGEMENT
**(Violation of the Lanham Act, 15 U.S.C. 1125(a) as against Art Van and the Manufacturer-Defendant)**

105.    Jofran incorporates by reference the preceding averments as though set forth in full herein.

106.    Jofran's trade dress is entitled to protection because it is inherently distinctive and non-functional and/or it has acquired distinctiveness.

107.    Art Van's and the Manufacturer-Defendant's use of the infringing trade dress constitutes false designation of origin or sponsorship of their furniture and services and tends to falsely represent that the furniture in the  Collections either (i) originate from Jofran or (ii) the furniture in the possession of and sold by the Levin and Wolf has been sponsored, approved or licensed by Jofran or are in some way affiliated with Jofran.

108.    Art Van's and the Manufacturer-Defendant's conduct is likely to confuse, mislead and/or deceive customers, purchasers and members of the public as to the origin of the furniture sold by Levin and Wolf or cause said persons to believe that the furniture sold by Levin and Wolf hase been sponsored, approved or licensed by Jofran or are in some way affiliated with Jofran.

109.    Upon information and belief, Art Van's and the Manufacturer-Defendant's conduct was and is willful and intentional.

110.    Art Van's and the Manufacturer-Defendant's conduct has damaged Jofran in an amount to be determined at trial and Jofran has suffered and will continue to suffer irreparable injury for which Jofran has no adequate remedy at law.

**COUNT II**
**COMMON LAW TRADE DRESS INFRINGEMENT**
**(Against Art Van and the Manufacturer-Defendant)**

111.    Jofran incorporates by reference the preceding averments as thought set forth in full herein.

112.    Art Van's and the Manufacturer-Defendant's aforesaid conduct constitutes common law trade dress infringement and unfair competition.

113.    Upon information and belief, Art Van's and the Manufacturer-Defendant's conduct is willful, deliberate and in bad faith and undertaken with prior knowledge that they each have no right or authority to use the trade dress or any confusing variant of the Collections.

114.    Art Van's and the Manufacturer-Defendant's use of the infringing trade dress constitutes false designation of origin or sponsorship of the furniture sold by Levin and Wolf and tends to falsely represent that the furniture originate from Jofran or that Art Van's and the Manufacturer-Defendant's merchandise and services and/or Art Van and the Manufacturer-Defendant themselves have been sponsored, approved or licensed by Jofran or are in some way affiliated with Jofran.

115.    Art Van's and the Manufacturer-Defendant's conduct is likely to confuse, mislead and/or deceive customers, purchasers and members of the public as to the origin of furniture sold by Levin and/or Wolf or cause said persons to believe that Art Van's and the Manufacturer-Defendant's merchandise and services and/or Art Van and the Manufacturer-Defendant

20

themselves have been sponsored, approved, or licensed by Jofran or are in some way affiliated with Jofran.

116.    Upon information and belief, Art Van's and the Manufacturer-Defendant's conduct was and is willful and intentional.

117.    Art Van's and the Manufacturer-Defendant's conduct has damages Jofran in an amount to be determined at trial and Jofran has suffered and will continue to suffer irreparable injury for which Jofran has no adequate remedy at law.

## COUNT III
### FRAUDULENT MISREPRESENTATION
### (as against Art Van)

118.    Jofran incorporates by reference the preceding averments as though set forth full herein.

119.    Art Van ordered the Collections from Jofran based on a representation that Levin and Wolf would sell the Collections in their retail stores.

120.    The representation was material and Art Van knew it to be false.

121.    The statement was made to induce the Jofran to act in reliance thereon.

122.    Jofran relied upon Art Van's statements to its detriment, which reliance was justified.

123.    Art Van ordered the Collections to determine if the Collections would be good sellers and if so, with the intent to copy them.

124.    As a result of its reasonable reliance on the Art Van's representations, Jofran was harmed in an amount to be determined at trial and Jofran has suffered and will continue to suffer irreparable injury for which Jofran has no adequate remedy at law.

21

## COUNT IV
## UNFAIR TRADE PRACTICES
### (Violation of M.G.L. c. 93A, § 11 as against Art Van)

125.    Jofran incorporates by reference the preceding averments as though set forth in full herein.

126.    Art Van was engaged in the conduct of trade or commerce in the Commonwealth of Massachusetts as both terms are defined and used in M.G.L. c. 93A.

127.    Art Van's acts in violation of the Lanham Act, 15 U.S.C. 1125(a), constitute unfair business practices and/or otherwise violate M.G.L. c. 93A.

128.    Jofran sustained a loss of money or property as a direct and proximate result of Art Van's unfair business practices.

129.    The unfair business practices by Art Van were willful and knowing violations of M.G.L. c. 93A.

130.    As a result of its reasonable reliance on the Art Van's representations, Jofran was harmed in an amount to be determined at trial and Jofran has suffered and will continue to suffer irreparable injury for which Jofran has no adequate remedy at law.

## COUNT V
## REQUEST FOR INJUNCTIVE RELIEF
### (as against all Defendants)

131.    Jofran incorporates by reference the preceding averments as though set forth in full herein.

132.    Jofran has been harmed by the actions of Art Van's and the Manufacturer-Defendant.

133.    Jofran is not currently aware whether any of the Debtors, other than Art Van, have sold or advertised or been in possession of any of the infringing furniture.  Nor is Jofran aware

whether any of the Debtors other than Art Van are currently in possession of any of the infringing furniture.

134.    Jofran expects that, based upon the Store Closing Sale Motion and the Ladd Affidavit, absent a temporary restraining order, preliminary injunction, and permanent injunction, the Defendants including the Consultant Defendants, will manufacture or cause to manufacture, transport, advertise or promote, sell, or otherwise transfer the infringing furniture, and such actions will cause irreparable harm to Jofran.

135.    Jofran is likely to be successful on the merits of its claims. This is so because it is likely to succeed in showing that the underlying claims for trade dress infringement and the related claims are valid. Indeed, as stated *supra* paragraphs 87-90, the Defendants, when confronted on at least one other occasion, did not deny copying the infringed furniture. Likewise, the blatant verbatim or near-verbatim item descriptions and sku numbers further support these claims.

136.    In the absence of entry of the requested injunctive relief, Jofran will be immediately and irreparably harmed because the continued distribution of the infringing furniture will cause Jofran to lose control over its reputation and goodwill.

137.    The balance of harm tips in favor of Jofran. Absent such relief, Jofran will be greatly harmed. In contrast, the Defendants' harm will be slight relative to the harm of Jofran.

138.    The public interest weighs in favor of the issuance of a temporary restraining order and injunction. The public interest is best served by fair competition in the marketplace without confusion. The injunctive relief requested herein shall further serve the public interest by reducing or eliminating customer confusion in regard to the infringing furniture and to prevent the additional distribution of the infringing furniture.

139.    For the reasons stated herein, Jofran is entitled to a temporary restraining order and preliminary and permanent injunction staying, restraining, and enjoining the Defendants from manufacturing, causing to be manufactured, transporting, advertising or promoting, selling, or otherwise transferring the infringing furniture.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff, Jofran Sales, Inc., hereby respectfully requests this Honorable Court:

1.    Temporarily restrain and thereafter preliminarily and permanently enjoin and restrain the Defendants and their affiliated companies, directors, principals, officers, employees, servants, agents, representatives, distributors, attorneys and persons, firms or corporations under their control or in active concert or participation with the defendants from:

(a)    Directly or indirectly manufacturing displaying, advertising, promoting, selling or offering for sale, licensing, supplying or otherwise distributing the Reign and Manadal furniture lines or any other design that is confusingly similar to Jofran's trade dress;

(b)    Directly or indirectly engaging in any conduct that tends to falsely represent that, or is likely to confuse, mislead or deceive purchasers, Defendants' customers and/or members of the public to believe that, the actions of the Defendants or the Defendants themselves are sponsored by, licensed by, or in any way affiliated or connected with Jofran; and

(c)    Directly or indirectly infringing on Jofran's trade dress or continuing to market, offer, sell, dispose of, license, lease, transfer, manufacture, cause to be manufactured, display, advertise, reproduce or develop any products derived or copies or

substantially similar to the Jofran Collections or to participate or assist in any such activity.

2.      Order the impounding for destruction of all copies or reproductions of any furniture products in the Reign and Manadal lines, or any other furniture, catalogs, brochures, websites, advertising, materials, labels, packages, signs, blanks, molds, and any materials in the Defendants' possession or under their control which contain infringing trade dress or which contain trade dress confusingly similar to any of Jofran's trade dress (including any in transit from an overseas manufacturing plant);

3.      Order that the Defendants deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all originals, copies, facsimiles, duplicates, blanks or molds of any work that infringes on Jofran's trade dress;

4.      Order an accounting of Defendants' profits gained as a result of their infringing activities and otherwise unlawful actions;

5.      Award Jofran all profits received by the Defendants from the sales and revenues of any kind made as a result of their infringing activities and otherwise unlawful actions;

6.      Award Jofran all damages sustained by Jofran as a result of Defendants' acts of infringement in an amount to be proved at trial, and that such damages be trebled pursuant to M.G.L. c. 93A;

7.      Award Jofran costs and attorneys' fees pursuant to M.G. L. c. 93A;

8.      Award Jofran punitive damages for the intentional, willful and wanton nature of the Defendants acts;

9.      Order that the Defendants file with this Court and serve upon Jofran within thirty (30) days following this Court's injunction issued in this action, a written report, under oath,

setting forth in detail the manner and form in which the Defendants have complied with such injunction; and

      10.    Award Jofran such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Requests a Trial by Jury.

Dated: March 12, 2020                Respectfully submitted,

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*_____
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Sarah M, Ennis (De Bar No. 5745)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com
E-mail: sennis@morrisjames.com

      and

Maureen Mulligan, BBO#556482
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2011
mmulligan@peabodyarnold.com

Counsel for Jofran Sales, Inc..